FILED
BILLINGS DIV.

IN THE UNITED STATES DISTRICT COURT 2008 OCT 6 PM 1 15

FOR THE DISTRICT OF MONTANA PATRICK E. DUFY, CLERK

BY _____

BILLINGS DIVISION

DEPUTY CLERK

| | |
|---|---|
| GLEN AND LORI SMITH, Husband and Wife,<br><br>        Plaintiff,<br><br>     vs.<br><br>WILLIAM C. EARHART COMPANY, INC., an Oregon corporation, and BOARD OF TRUSTEES OF THE MONTANA TEAMSTERS-CONTRACTORS/EMPLOYERS TRUST,<br><br>        Defendants. | **CV-07-143-BLG-RFC-CSO**<br><br>**FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

Plaintiffs Glen and Lori Smith ("Smiths") initiated this action against Defendant William C. Earhart Company, Inc. ("Earhart") under the Employee Retirement Income Security Act ("ERISA"). *Cmplt.* (*Court's Doc. No. 1*). After the Court issued its Findings and Recommendation (*Court's Doc. No. 10*)[1] granting in part and denying in part Earhart's motion to dismiss, the Smiths filed their First Amended Complaint (*Court's Doc. No. 11*) (hereafter "*Am. Cmplt.*"). In addition to Earhart, the Smiths now also name the Board of Trustees of the Montana Teamsters-Contractors/Employers Trust ("the Board") as a defendant.

---

[1]Chief Judge Cebull, in an Order (Court's Doc. No. 13) filed on April 15, 2008, adopted the Findings and Recommendation in their entirety.

The Smiths, invoking the Court's federal question jurisdiction under 28 U.S.C. §
1331,[2] claim that Earhart, acting as an ERISA fiduciary and claim administrator, and the
Board, as the plan administrator, breached their duties to the Smiths and caused them
harm by improperly denying medical claims made under an ERISA health plan. *Am.
Cmplt. at 2-6*. The Smiths, who ultimately received payment, now seek judgment
awarding them (1) interest on sums awarded; (2) costs of the lawsuit, accounting, and
attorneys' fees; (3) an injunction on any further denials of claims for coverage based on
exclusion of Lori Smith's bilateral mastectomies and sequellae; (4) all appropriate
penalties under ERISA, 29 U.S.C. § 1132©; and (5) any and all additional equitable
relief, including restitution, under 29 U.S.C. § 1132 *et seq*. *Id. at 6-7*.

Now pending before the Court is Defendants' Motion for Summary Judgment
(*Court's Doc. No. 23*). Having reviewed the record, together with the parties'
arguments in support of their respective positions, the Court issues the following
Findings and Recommendation.

## I.   *PLAINTIFFS' ALLEGATIONS*

The Smiths' First Amended Complaint alleges as follows:

Defendants administer the self-funded Teamsters-Contractors/Employers Trust
("the Plan") under ERISA. Glen Smith and his family received medical benefits from the
Plan because of his employment with United Parcel Service. *Am. Cmplt. at ¶ 4*.

Beginning in 1993, Lori Smith ("Lori") began having infections in her breasts.

---

[2]The Court also has jurisdiction under 29 U.S.C. § 1132(e)(1).

The infections required repeated treatment, including surgical drainage, antibiotics, and pain control. *Id. at ¶ 7.* Defendants approved payments for treatment of the infections until October 2000. Defendants then denied pre-approval of payment for a bilateral mastectomy procedure. Lori appealed the denial. *Id. at ¶ 8.*

On December 11, 2000, Lori underwent bilateral mastectomies and breast reconstruction. Defendants denied payment. *Id. at ¶ 9.*

Lori appealed Defendants' denials of payment between May 2001 and May 2003. *Id. at ¶ 10.*

On August 14, 2001, the Smiths' former attorney requested from Defendants "all your health insurance records, including medical bills, statements, payouts and narrative reports, from January 1, 1990 to present." *Id. at ¶ 11.*

On February 23, 2007, the Smiths' current attorney wrote Defendant Earhart requesting "a detailed summary of all claims denied under the above-cited authority for the period requested, as well as your entire claim file relating to this issue, including all correspondence, notices, Participant Explanation of Benefits, adjustor notes, e-mails, or other documents, whether generated by you or by others, including but not limited to, any documents provided to United of Omaha or received from United of Omaha relating to said denials." *Id. at ¶ 12* (emphasis omitted). Defendant Earhart gave untimely and incomplete responses to these document requests. *Id. at ¶ 13.*

In an October 29, 2003, letter to Lori, Defendants conceded that "the mastectomy and breast reconstruction were medically necessary." *Id. at ¶ 14.*

From May 2003 until August 2007, Defendants refused to pay all medical charges on Lori's behalf for treatment related to her mastectomies. *Id. at ¶ 15.* Medical reviews from November 2003, May 2005, and June 2007 all recommended payment of all claims denied under Exclusion I, page 47 of the Plan. *Id. at ¶ 16.*

In Defendants' March 28, 2007, response to the Smiths' February 23, 2007, document request, the Smiths received, for the first time, Mutual of Omaha reviews from November 2003 and May 20, 2005, recommending payment of Lori's 2004 and 2005 surgeries. *Id. at ¶ 17.*

Defendants continued to deny the Smiths' claims for payment between 2000 and 2007 without seeking explanation for Mutual of Omaha's recommendations and without notifying the Smiths about the recommendations. *Id. at ¶ 18.* Defendants based their denials on Exclusion I, page 47 of the Plan. *Id.*

On June 11, 2007, an outside reviewer also recommended payment of all of Lori's mastectomy-related claims. *Id. at ¶ 19.*

On June 12, 2007, as part of an appeal under the Plan's terms, four members of the Board heard a transcribed appeal from the Smiths. The Board reversed all denials related to Lori's mastectomies and derivative treatment from 2001 to the time of the appeal. *Id. at ¶ 20.* After the appeal, the Board noted in a memorandum that Earhart never revealed to them Mutual of Omaha's review of May 20, 2005. *Id. at ¶ 21.*

The Smiths "have incurred attorney expenses, partial foreclosure on their home and land, loss of credit rating, wage garnishment and related expenses, interest and

legal expenses on medical liens, and the costs and fees of bringing this matter to appeal." *Id. at ¶ 22.*

On October 23, 2007, the Smiths filed this action. On July 25, 2008, Defendants moved for summary judgment.

## II.   *UNDISPUTED FACTS*[3]

For purposes of the pending motion, the parties stipulate to the following facts:

Glen Smith was a participant in an employee welfare benefit Plan administered under the provisions of ERISA, 29 U.S.C. § 1001 et seq. The Plan provided medical benefits to Glen and his family through his employment at United Parcel Service.

At all material times benefits were provided pursuant to an insurance contract with Mutual of Omaha. The Board is the designated plan administrator. The Board retained Earhart as a third-party administrator. Earhart's duties include processing medical claims on behalf of the Board.

Lori Smith began developing abscesses on her breasts in 1993. She was subsequently diagnosed as having Fox-Den's disease. As a result of the disease, she had a mastectomy in December 2000.

Lori subsequently had numerous breast reconstruction procedures and surgeries. Earhart initially denied the claims on the basis that the Plan excluded benefits for breast reconstruction which were not the result of cancer.

---

[3]The facts listed are from Defendants' Statement of Uncontroverted Facts *(Court's Doc. No. 25)* filed in support of Defendants' summary judgment motion. In Plaintiffs' Statement of Genuine Issues *(Court's Doc. No. 27)*, the Smiths stipulate to the facts listed.

Lori appealed the denials in 2001. The denials were upheld.

In 2003, Mutual of Omaha reviewed the claims incurred to date. Representatives of Mutual of Omaha indicated that the Women's Health and Cancer Rights Act, a 1998 federal law, overruled the Plan provisions which provided that benefits were only available for breast reconstruction following a mastectomy that was the result of cancer. They directed as a result that claims for services or supplies related to breast reconstruction incurred between 2000 and May 2003 be paid. Two services in May 2001 and November 2001 remained denied as being cosmetic in nature.

On November 10 and December 11, 2003, Lori had two additional breast reconstruction procedures. The medical notes related to these procedures were submitted to Mutual of Omaha for review by its medical review department. The initial response provided in February 2004 indicated that the November 10, 2003, procedure was excluded as being cosmetic in nature, but that the December 11, 2003, procedure should be covered as medically necessary. Following an inquiry from Earhart as to why the second procedure could be covered if the first procedure was not, Mutual of Omaha indicated that both procedures should be denied. Benefits were denied on the basis the procedures were primarily cosmetic in nature.

Claims for a number of additional procedures related to Lori's breast reconstruction were performed in 2004, and were submitted and denied. Benefits were denied on the basis the procedures were primarily cosmetic in nature. Following a surgery in February 2005, medical records were submitted by Earhart to Mutual of

-6-

Omaha for review.  On May 20, 2005, a letter was received from a Mutual of Omaha claim adjuster indicating that the claims should be paid.

Earhart personnel reviewed the response, but believed that the claim adjuster's interpretation of the terms of the Plan was erroneous and continued denial of the claims in question.

Other claims for services or supplies related to Lori's breast reconstruction were incurred during the remainder of 2005 and 2006.  The Board Claims Administrator Office denied those claims.

The Smiths ultimately filed an untimely appeal to the Board, and a Benefit Claim Review Hearing was held on June 12, 2007.  Prior to the hearing, on June 11, 2007, the Board requested an independent medical review by Innovative Health Strategies, which recommended that the denied procedures be considered complications of a covered procedure and that benefits be provided.

In its Memorandum of Findings and Conclusions, dated June 19, 2007, the Board reversed all claim denials related to the mastectomies and their derivative care from 2001 through 2007.

In its Memorandum of Findings and Conclusions, the Board addressed the fact that the appeal was untimely, but stated as follows:

> The Board of Trustees intent, however, is to provide claimant benefits for services which are Covered Expenses under the Plan.  Given the recommendations by the medical reviewers that the services in question be treated as Covered Expenses, the Trust will, on a non-precedential basis, provide the benefits without regard to the untimely appeal of most of the denied claims.

During the appeal, and in addition to the benefits which she sought and obtained, Lori also sought other damages, including attorney's fees, costs and interest. The Board denied those other damage claims because "[t]he Plan does not provide attorney's fees, costs or interest as a remedy in a claim appeal before the Board of Trustees."

During the appeal hearing, the Smiths also requested an injunction/moratorium on any further denial of benefits on the basis that any breast reconstruction services are for cosmetic or reconstructive surgery.  The Board denied the requested remedy, stating:

> All services provided to Trust participants must be Covered Expenses under the terms of the Plan.  The Trust Claims Administrative Agent will continue to review any subsequent services with regard to whether benefits are properly payable under the terms of the Class 15 Benefits Plan.

## III.   **THE PARTIES' ARGUMENTS**

Defendants argue generally that they are entitled to summary judgment because "the relief which the plaintiffs seek is unavailable under ERISA[.]" *Br. in Spt. of Defts' Mtn. for Summary Judgment ("Defts' Br.") (Court's Doc. No. 24) at 3.*  Specifically, in summary, Defendants argue that:

(1)   relief under 29 U.S.C. § 1132(a)(1)(B) is unavailable to the Smiths because their "rights have been enforced[,] ... all benefits due under the terms of the Plan have been paid[,] ... [and they] are not entitled to any additional relief under section 1132(a)(1)(B)[,]" *Id. at 3-4;*

(2)   relief under 29 U.S.C. § 1132(a)(3) is unavailable to the Smiths because:

(a)   the Smiths' request for an injunction on further coverage denials of Lori's

bilateral mastectomies and their sequellae is not a request "to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan," as required under § 1132(a)(3)(A) in that it would frustrate the Plan administrator's duty to evaluate evidence related to all claims and "compromise the Plan's obligations to all participants and beneficiaries[,]" *Id. at 6;*

(b)     the Smiths' claimed damages of "attorney expenses, partial foreclosure on their home and land, loss of credit rating, wage garnishment and related expenses, interest and legal expenses on medical liens, and the costs and fees of bringing this matter to appeal[]" are not "appropriate equitable relief" allowed under § 1132(a)(3)(B), *id. at 4-5;* and

©       the Smiths' prayer for "any and all additional equitable relief, including restitution," lacks an identifiable basis for appropriate equitable restitution because they "have not and cannot show that [Defendants] are holding specific property or funds which in good conscience belongs to" the Smiths, *id. at 6-7;*

(3)     relief under 29 U.S.C. § 1132(c)(1) is unavailable to the Smiths because ERISA does not require a plan administrator to disclose medical reviews or other documents concerning specific claim appeals, *id. at 8-9;* and

(4)     relief under the Women's Health and Cancer Rights Act, 29 U.S.C. § 1185b, is unavailable to the Smiths because that Act does not allow an implied private right of action for a violation of it, *id. at 9.*

In response, the Smiths ask the Court to deny Defendants' motion arguing

generally that they seek through this action "contractual, punitive, and equitable relief

under 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(3), 1132©, and fees, interest, and costs

under 1132(g)." *Br. in Resp. to Defts' Mtn. for Summary Judgment ("Smiths' Br.")*

*(Court's Doc. No. 26) at 4.* In doing so, the Smiths address each of Defendants'

arguments in turn.

First, they argue that relief is available to them under § 1132(a)(1)(B) because

they are seeking "benefits under the terms of the Plan." *Id.* They argue that "[w]hen

-9-

the Plan improperly and illegally denied benefits on November 13, 2000, Plaintiffs'

claims accrued interest[]" which they now seek "under the terms of their Plan and the

relief authorized by 29 U.S.C. § 1132(a)(1)(B)." *Id. at 5.* Also, they note that

> [a]rguably, 29 U.S.C. § 1132(a)(1)(B) provides a remedy in contract for
> the expectancies inherent in Defendants' fulfilling their contractual
> obligations under the Plan[]" and that "expectation damages, seen from
> Plaintiffs' reasonable belief that foreclosure, garnishment, and legal
> expenses would not have occurred but for their reasonable reliance upon
> the contractual terms of the Plan, preclude summary judgment as to
> expectancy damages where the expectancy (coverage of medical costs) is
> unambiguous and an intrinsic part of the contractual bargain.

*Id.*

Second, the Smiths argue that relief is available to them under § 1132(a)(3)

because:  (1) § 1132(a)(3)(B)'s allowance of "appropriate equitable relief" encompasses

their quest for interest on the funds that Defendants "wrongly and illegally denied Lori

Smith" when they improperly denied her payment for "covered expenses" under the

Plan for more than 7 years, and because Defendants "continue to hold those identifiable

funds in their Trust[,]" *id. at 6-7*; and (2) § 1132(a)(3)(A) provides for injunctive relief,

which the Smiths now seek to enjoin "the Plan from future denials of related claims

until such time as a fully disclosed, independently conducted medical review establishes

an absence of the medical necessity of the claim[,]" *id. at 8-9*.

Third, the Smiths argue that relief is available under § 1132(c)(1).  They argue

that the documents and explanations for Defendants' denials of Lori's claims that they

previously sought fall under the types of documents and denial explanations that §§

1132(c)(1) and 1133, respectively, require plan administrators to provide.  *Id. at 9-11.*

-10-

Fourth, the Smiths argue that although there is no private cause of action for violations of the Women's Health and Cancer Rights Act of 1998, there exists a cause of action for violation of that Act's notice requirements. *Id. at 11-12.* They argue that Defendants violated the requirements of § 1132©, which subsumes 29 U.S.C. § 1185b, when they failed to share with the Smiths "their external information from Lori Smith's doctor [and] their own internal discussions which followed Lori's attorney's letter of August 2003." *Id. at 12.* They argue that "[d]iscovery will expose the precise length of time Defendants withheld their statutorily-required notice and application of the Women's Health and Cancer Rights Act of 1998[]" and that the Court, therefore, should deny summary judgment. *Id. at 13.*

In reply, Defendants again argue that the money damages that the Smiths seek in the form of interest on "the alleged wrongfully delayed medical benefits" are unavailable under § 1132(a)(1)(B) and § 1132(a)(3). *Reply Br. In Spt. of Defts' Mtn. for Summary Judgment ("Reply Br.") (Court's Doc. No. 28) at 1.* They argue that while no Ninth Circuit case has addressed the issue, decisions from other circuits have rejected claims for interest under § 1132(a)(1)(B) in similar circumstances where the plan at issue did not expressly provide for payment of such interest. *Id. at 2-3* (citing cases). They also argue that such claims brought under § 1132(a)(3) similarly have been rejected in other circuits. *Id. at 3* (citing cases).

Defendants also argue that the injunctive relief the Smiths seek "would effectively usurp the discretionary authority accorded the Plan administrator in

-11-

determining whether a particular claim constitutes a Covered Expense." *Id. at 4.* They

also note that "[s]uch relief would violate the terms of the Plan regarding claims

procedure requirements, and would compromise the Plan's obligations to all participants

and beneficiaries." *Id.*

Finally, Defendants again argue that the Smiths are not entitled to statutory

penalties under 29 U.S.C. § 1132(c)(1). *Id. at 4-5.*

## IV.    *SUMMARY JUDGMENT STANDARD*

Summary judgment is proper where the pleadings, discovery and disclosure

materials on file, and any affidavits show that there is "no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56©.  Material facts are those which may affect the outcome of the case.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute as to a material

fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for

the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying

those portions of the pleadings, discovery, and affidavits that demonstrate the absence

of a genuine issue of material fact.  *Celotex Corp. v. Cattrett,* 477 U.S. 317, 323 (1986).

Where the moving party will have the burden of proof on an issue at trial, it must

affirmatively demonstrate that no reasonable trier of fact could find other than for the

moving party.  But on an issue for which the opposing party will have the burden of

proof at trial, the moving party need only point out "that there is an absence of

evidence to support the nonmoving party's case." *Id.*

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

## V.    *DISCUSSION*

The Court addresses *seriatim* the issues raised in Defendants' summary judgment motion.

### A.    *Relief Available Under 29 U.S.C. § 1132(a)(1)(B)*

ERISA's civil enforcement section provides, in relevant part, as follows:

(a) Persons empowered to bring a civil action.  A civil action may be brought--

(1) by a participant or beneficiary--

       *        *        *

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]

29 U.S.C. § 1132(a)(1)(B).

Again, Defendants argue that the Smiths' rights already have been enforced and that all benefits due under the terms of the Plan have been paid.  Thus, Defendants argue, the Smiths are not entitled to any additional relief.

-13-

The Smiths, on the other hand, argue that accrued interest on delayed payments that Defendants improperly and illegally withheld is authorized under § 1132(a)(1)(B) as "benefits due to [them] under the terms of [the] plan." In essence, they ask the Court to read into the plan a term that interest on delayed payments be deemed a "benefit[]" due ... under the terms of [the] plan."

As an initial matter, it is undisputed that the terms of the Plan do not expressly provide for recovery of interest on withheld benefits payments. Neither party has so argued, and the Court's review of the Plan revealed no such express provision. See Defts' Reply Br. at Ex. A. Also, it is well-settled that "an entitlement to interest on withheld benefits may not be implied into ERISA itself[.]" Dobson v. Hartford Life & Accident Ins. Co., 518 F.Supp.2d 365, 373 (D. Conn. 2007) (citing Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 146-47 (1985)[4] and Dobson v. Hartford Fin. Serv. Group, Inc., 389 F.3d 386, 398 (2d Cir. 2004)).

The issue here, then, is whether interest on withheld benefits payments can be implied into the terms of the Plan itself such that it can be deemed a "benefit[]" due to [the Smiths] under the terms of [their] plan" under § 1132(a)(1)(B). For the reasons

---

[4]The Supreme Court observed in Russell that:

"The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted ... provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly. The assumption of inadvertent omission is rendered especially suspect upon close consideration of ERISA's interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a comprehensive and reticulated statute.... Where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." 473 U.S. at 146-47 (emphasis in original).

that follow, the Court concludes that it can be.  Thus, summary judgment on this issue
should be denied.

Although the Ninth Circuit has not addressed this precise issue, other courts
have, with varying results.  This Court finds most reasonable and persuasive the
discussion in *Dobson v. Hartford Life & Accident Ins. Co.*, 518 F.Supp.2d 365, 373 (D.
Conn. 2007).  In *Dobson*, the court discussed treatment of the issue in the Second
Circuit as follows:

> The Second Circuit in *Dunnigan v. Metropolitan Life Insurance Company*,
> 277 F.3d 223, 231 (2d Cir. 2002), did not actually resolve the issue due to
> its finding that plaintiff was entitled to interest under § 502(a)(3), but it
> nonetheless recognized "that courts have frequently stated that the
> remedy of § 502(a)(1)(B) of 'benefits due ... under the Plan' may be
> invoked only to recover benefits under the explicit terms of the plan."  The
> court also observed that "[o]n the other hand, it seems difficult to justify a
> distinction that would make an explicitly stated right recoverable while an
> implicit right was not.  A benefit implicitly due under the terms of a plan
> would seem to be a 'benefit due ... under the terms of his plan.' "  *Id.*  In
> *Babcock ex rel. Computer Management Sciences, Inc. v. Computer
> Associates International, Inc.*, 186 F.Supp.2d 253, 260 (E.D. N.Y. 2002),
> the court, considering a motion to dismiss plaintiff's § 502(a)(1)(B) claim,
> concluded that "the Second Circuit's recent decision in *Dunnigan* teaches
> that the interest after a reasonable period of delay can be an implicit
> benefit under the terms of a benefit plan," and, viewing the facts in the
> light most favorable to the plaintiff, determined that "interest after a
> reasonable period of delay can be an implicit benefit under the Plan."

518 F.Supp.2d at 373-74.

As the court in *Dobson* noted, "recovery of interest on unreasonably withheld
benefits can be implied into the terms of the Plan as a 'benefit' on the basis of the
universally recognized concept of the time value of money[.]"  *Id.* at 374.  The court
aptly recognized that "[i]f benefits are not paid until after they are due, beneficiaries

-15-

receive less monetary value than they are contractually entitled to." *Id.* (citing *Dobson*, 389 F.3d at 395).

Notably, this conclusion is consistent with the well-settled rationale for the "presumptive[] appropriate[ness]" of awards of prejudgment interest on unpaid ERISA benefits. The D.C. Circuit, stating its agreement with the Third, Seventh, Eighth, and Tenth Circuits' conclusion on the issue noted:

> The presumption in favor of prejudgment interest has three recognized bases. First, to permit the fiduciary to retain the interest earned on wrongfully withheld benefits would amount to unjust enrichment - a fiduciary would benefit from failing to pay ERISA benefits. See *Fotta* [*v. Trustees of United Mine Workers of Am., Health & Ret. Fund of 1974*], 165 F.3d [209,] 212 [(3d Cir. 1998)] ("To allow the Fund to retain the interest it earned on funds wrongfully withheld would be to approve of unjust enrichment." (internal quotation marks omitted)). Second, prejudgment interest ensures that a beneficiary is fully compensated, including for the loss of the use of money that is his. See *Holmes* [*v. Pension Plan of Bethlehem Steel Corp.*], 213 F.3d [124,] 132 [(3d Cir. 2000)]; *Short v. Cent. States, Se. & Sw. Areas Pension Fund*, 729 F.2d 567, 576 (8th Cir. 1984). Finally, prejudgment interest promotes settlement and deters any attempt to benefit unfairly from inevitable litigation delay. See *Gen. Facilities, Inc. v. Nat'l Marine Serv., Inc.*, 664 F.2d 672, 674 (8th Cir. 1981). Prejudgment interest, therefore, should be denied only if exceptional circumstances -- a claimant's bad faith, dilatoriness or frivolous claim – make the award unfair. See *Stroh Container* [*Co. v. Delphi Indus., Inc.*], 783 F.2d [743,] 752 [(8th Cir. 1986)].

*Moore v. CapitalCare, Inc.*, 461 F.3d 1, 12-13 (D.C. Cir. 2006) (other citations omitted).

Here, based on the foregoing rationale, the Court concludes that recovery of interest on any unreasonably withheld benefits payments is an implicit benefit under the terms of the Plan. Thus, relief may be available to the Smiths under § 1132(a)(1)(B) rendering summary judgment on the issue inappropriate.

In reaching this conclusion, the Court is mindful that two circuit courts of appeal have held to the contrary. First, in *Clair v. Harris Trust & Savings Bank*, 190 F.3d 495, 497 (7th Cir. 1999), the plaintiffs claimed interest that they could have earned had they timely been paid benefits and invested them. The Seventh Circuit held that "interest is not a benefit specified anywhere in the plan, and only benefits specified anywhere in the plan can be recovered in a suit under [§ 1132(a)(1)(B)]." Second, in *Flint v. ABB, Inc.*, 337 F.3d 1326, 1329 (11th Cir. 2003), the Eleventh Circuit joined the Seventh Circuit's conclusion from *Clair* in determining that a contractual term for interest cannot be implied as a benefit of a plan. See also *Green v. Holland*, 480 F.3d 1216, 1222-24 (11th Cir. 2007) (reaffirming its conclusion in *Flint*).

Although reasonable jurists certainly can disagree on this question, the Court finds these decisions unpersuasive. As noted in the Connecticut district court's opinion in *Dobson*, the appeals courts do not appear to have considered the time-value-of-money "basis for implying interest as part of the 'benefit' in the case of delayed payments, but rather relied only on the explicit terms of the plans at issue." 518 F.Supp.2d at 374. The problem with this approach, as the Second Circuit has recognized, is that a plan could withhold benefits to accrue interest and deprive a beneficiary of funds to which they may be contractually entitled. As the district court in *Dobson* wrote, quoting the Second Circuit's treatment of the issue:

> "Hartford could again disregard its contractual obligation to pay benefits monthly. Instead of paying benefits when due, Hartford could accumulate the cash, conserve its resources, earn interest off the improperly retained funds, and deprive disabled beneficiaries of desperately needed benefits

-17-

> without contractual consequences -- obligating the beneficiary to retain counsel and institute suit in the hope of obtaining relief quickly enough to avoid injury, or recovering some equitable substitute for interest on the delayed payments." *Dobson*, 389 F.3d at 395.

*Dobson*, 518 F.Supp.2d at 375.

The district court in *Dobson* also noted:

> Indeed, as the Second Circuit recognized, the only way to incentivize timely payments to beneficiaries, rather than having them endure a gap in the payment stream (during which time, the Second Circuit anticipated, they might have to borrow money to meet their "accumulating obligations"), is to regard the time-value of this monthly benefit as the full value of the "benefit" promised under the Plan, absent any express provision to the contrary.  While beneficiaries might otherwise seek to mitigate their losses by "bringing suit for an injunction to compel timely payments or by recovering an equitable substitute for interest," as the Circuit observed "those potential remedies may be scant comfort in view of the high cost and extreme impracticality of bringing suit for what are likely to be small amounts."

*Id.* (quoting *Dobson*, 389 F.3d at 395).  The thus Court concludes that summary judgment in Defendants' favor on this issue is inappropriate and should be denied.

## B.  <u>Relief Available Under 29 U.S.C. § 1132(a)(3)</u>

ERISA's civil enforcement section further provides, in relevant part, as follows:

(a) Persons empowered to bring a civil action.  A civil action may be brought--

        *       *       *

(3)    by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]

29 U.S.C. § 1132(a)(3).

The U.S. Supreme Court in Varity Corp. v. Howe, 516 U.S. 489, 512 (1996), held
that subsection 1132(a)(3) allows claims for individualized equitable relief for breach of
fiduciary duties.  See also Chappel v. Laboratory Corp. of America, 232 F.3d 719, 727
(9th Cir. 2000).  The Court explained that subsection 1132(a)(3) is a "catchall provision"
that "act[s] as a safety net, offering other appropriate equitable relief for injuries
caused by violations that [section 1132] does not elsewhere remedy."  Id. at 512.

## 1.   *Appropriate Equitable Relief Under § 1132(a)(3)(B)*

With respect to the Smiths' claimed damages, as noted above Defendants argue
that they are entitled to summary judgment because the types of relief that the Smiths
seek are not "appropriate equitable relief" as contemplated under subsection
1132(a)(3).  They also argue that the Smiths' prayer for "any and all additional
equitable relief, including restitution," lacks an identifiable basis for appropriate
equitable restitution because they "have not and cannot show that [Defendants] are
holding specific property or funds which in good conscience belongs to" the Smiths.
*Defts' Br. at 6-7.*

Having considered the parties' arguments, the Court concludes that summary
judgment on this issue should be granted with respect to the Smiths' claims for
"attorney expenses, partial foreclosure on their home and land, loss of credit rating,
wage garnishment and related expenses, interest and legal expenses on medical liens,
and the costs and fees of bringing this matter to appeal."  The Court also concludes,
however, that summary judgment should be denied with respect to the Smiths' claim

-19-

for "any and all equitable relief, including restitution" in the form of interest accrued on delayed benefits payments.

With respect to the Smiths' claims for "attorney expenses, partial foreclosure on their home and land, loss of credit rating, wage garnishment and related expenses, interest and legal expenses on medical liens, and the costs and fees of bringing this matter to appeal[,]" such claims seek payment of money damages as compensation for loss resulting from Defendants' alleged breach of a legal duty. As such, they are not actionable under § 1132(a)(3). *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002). Summary judgment with respect to the Smiths' claims for these types of damages, therefore, should be granted in Defendants' favor.[5]

With respect to the Smiths' claim for "any and all equitable relief, including restitution" in the form of interest accrued on delayed benefits payments, however, the Court concludes that summary judgment is not appropriate. As the parties have discussed in their briefs, the U.S. Supreme Court in recent years has endeavored to define the scope of relief available under § 1132(a)(3).

First, in *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002), an ERISA plan's insurer sued a plan participant (Knudson) for reimbursement of medical expenses it paid her under the plan. It did so after she successfully recovered tort damages from a tortfeasor. *Id.* at 207-08. The insurer argued that Knudson's failure to

---

[5]As the Smiths correctly noted in their response brief, Defendants did not address in their summary judgment motion the Smiths' claims for relief under 29 U.S.C. § 1132(g). Thus, those claims are not addressed herein.

-20-

reimburse it violated the plan's terms and that, in equity, it was entitled to an injunction and restitution. *Id.* at 210-12. The Supreme Court concluded that the action could not proceed under § 1132(a)(3) because the insurer's action was not equitable in nature. Rather, it was essentially a claim for money – a traditional suit at law for damages. *Id.* at 210. The Supreme Court rejected the insurer's attempt to characterize the action as one for equitable restitution because "the funds to which petitioners claim[ed] an entitlement" were not in Knudson's possession, but rather had been placed in a special needs trust. *Id.* at 207, 214. As the Court explained:

> The basis for petitioners' claim is not that respondents hold particular funds that, in good conscience, belong to petitioners, but that petitioners are contractually entitled to *some* funds for benefits that they conferred. The kind of restitution that petitioners seek, therefore, is not equitable – the imposition of a constructive trust or equitable lien on particular property – but legal – the imposition of personal liability for the benefits that they conferred upon respondents.

*Id.* at 214 (emphasis in original).

Next, in *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356 (2006), the Supreme Court, addressing a case with facts similar to those in *Knudson*, further refined *Knudson's* scope by allowing a plaintiff to sue under § 1132(a)(3) to enforce a benefit plan's reimbursement provision under an equitable restitution theory. The Court distinguished *Knudson* because in *Sereboff,* the ERISA plan administrator (Mid Atlantic) sought

> sought "specifically identifiable" funds that were "within the possession and control of the Sereboffs" - that portion of the tort settlement due Mid Atlantic under the terms of the ERISA plan, set aside and "preserved [in the Sereboffs'] investment accounts." Unlike Great-West, Mid Atlantic did not simply seek "to impose personal liability ... for a contractual obligation to pay money." *Knudson*, 534 U.S., at 210, 122 S.Ct. 708. It alleged

> breach of contract and sought money, to be sure, but it sought its
> recovery through a constructive trust or equitable lien on a specifically
> identified fund, not from the Sereboffs' assets generally, as would be the
> case with a contract action at law.  ERISA provides for equitable remedies
> *to enforce plan terms,* so the fact that the action involves a breach of
> contract can hardly be enough to prove relief is not equitable; that would
> make § 502(a)(3)(B)(ii) an empty promise.  This Court in *Knudson* did not
> reject Great-West's suit out of hand because it alleged a breach of
> contract and sought money, but because Great-West did not seek to
> recover a particular fund from the defendant.  Mid Atlantic does.

*Id.* at 362-63.

Applying this authority to the instant case, the Court concludes that summary

judgment is inappropriate on this claim.  In doing so, the Court rejects Defendants'

general argument that suits for accrued interest on delayed benefits payments always

are cast as actions for money past due under a contract, are a classic form of

compensatory damages, and therefore, are always ineligible to qualify as "equitable

relief" under § 1132(a)(3).

Here, the Smiths are claiming interest on delayed benefits payments.  With this

claim, they do not seek recovery from Defendants' assets generally.  Rather, the Smiths

seek accrued and presumably calculable interest on those "specifically identified

fund[s]" that comprised the delayed benefits payments that they ultimately received

from Defendants.  Under *Sereboff,* accrued interest on delayed benefits payments that

the Smiths seek under § 1132(a)(3) is available.

In reaching this conclusion, the Court finds Defendants' reliance on *Flint v. ABB,*

*Inc.,* 337 F.3d 1326 (11th Cir. 2003), misplaced.  In *Flint,* which was decided before the

Supreme Court's decision in *Sereboff,* the Eleventh Circuit expressly declined to address

-22-

"the question whether [§ 1132(a)(3)] ever allows an award of interest for delayed benefits or whether such a claim is an impermissible attempt to dress an essentially legal claim in the language of equity." 337 F.3d at 1331 (noting that "[w]e need not ... decide that issue in this case.").

Similarly, the Eleventh Circuit in *Green v. Holland*, 480 F.3d 1216 (11th Cir. 2007), another case that Defendants cited, again did not address the issue. 480 F.3d at 1226, n.6 ("We leave for another day the question of whether a stand-alone claim for accrued interest – where benefits were withheld in violation of either a benefit plan or ERISA itself – would be cognizable in this circuit under [§ 1132(a)(3)] on a theory of equitable restitution."). In addressing the requisite proof for a § 1132(a)(3) equitable relief claim, however, the Eleventh Circuit recounted decisions from several jurisdictions that have recognized the type of relief the Smiths seek here. The Eleventh Circuit noted:

> All of our sister circuits that have recognized a claim for interest under § 502(a)(3) on an equitable restitution theory have done so *only* in light of evidence that the plan administrator either violated the terms of the plan in question, or violated ERISA itself. *See, e.g., Skretvedt* [*v. Dupont*], 372 F.3d [193,] 215 [(3d Cir. 2004)] (stating that if a plaintiff's benefits "were withheld or delayed in violation of ERISA or an ERISA plan," then an action for interest under § 502(a)(3) would lie) (citation and internal quotations omitted); *Fotta v. Trustees of the United Mine Workers of Am.*, 319 F.3d 612, 617 (3d Cir.2003) (same); *Parke v. First Reliance Standard Life Ins. Co.*, 368 F.3d 999, 1006-09 (8th Cir.2004) (stating that a defendant's actions "in initially denying and later suspending [the plaintiffs]'s benefits constituted a breach of its obligations under the plan and its statutory duties under ERISA," and that therefore an action for interest under § 502(a)(3) was viable); *Dunnigan v. Met. Life Ins. Co.*, 277 F.3d 223, 230 (2d Cir.2002) (permitting interest under § 502(a)(3) where the benefits were "unreasonably delayed and made long after [the

-23-

claimant] was entitled to receive them" under the terms of the plan);
*Moore v. CapitalCare, Inc.*, 461 F.3d 1, 13 (D.C. Cir.2006) (finding that the
lower court acted improperly in denying a plaintiff's claim for interest,
where the defendant failed to pay benefits to which the plaintiff was
clearly entitled under his ERISA plan).

480 F.3d at 1226, n.7.

Although it does not appear that the Ninth Circuit has addressed the issue, the

courts referenced in the foregoing passage from *Green* clearly have recognized the

availability of the relief the Smiths seek here under § 1132(a)(3).  Summary judgment

in Defendants' favor on this issue, therefore, should be denied.

### 2.   *Injunctive Relief*

Next, Defendants seek summary judgment on the Smiths' claim for an injunction

enjoining the Plan from future denials of related claims.  Defendants argue that the

relief the Smiths seek would frustrate the Plan administrator's duty to evaluate evidence

related to all claims and "compromise the Plan's obligations to all participants and

beneficiaries."  *Defts' Br. at 6.*

In their response brief, the Smiths appear to have narrowed their request for

injunctive relief from what they requested in their First Amended Complaint.  They now

request "an injunction enjoining the Plan from future denials of related claims until such

time as a fully disclosed, independently conducted medical review establishes an

absence of the medical necessity of the claim."  *Smiths' Br. at 8.*

Again, § 1132(a)(3)(A) allows a plan participant to bring a civil action "to enjoin

any act or practice which violates any [ERISA] provision ... or the terms of the plan[.]"

-24-

Here, the Smiths base their claim for an injunction on Defendants' alleged past practice of improperly denying Lori Smith's claims for benefits payments related to treatment of her breast condition.  Courts have found that relief such as that sought by the Smiths here is available under ERISA where plan fiduciaries have engaged in serious misconduct in violation of their duties.  *See, e.g., Beck v. Levering,* 947 F.2d 639, 641 (2d Cir. 1991) (concluding that permanent injunctions are an available remedy under ERISA where a plan fiduciary engages in sufficiently egregious self-dealing or misconduct).

On the current record, the Court is unable to determine whether the type of relief the Smiths seek here is appropriate under the circumstances.  The record is not sufficiently developed to allow the Court to render a thoughtful recommendation on this issue.  Also, neither party has directed the Court to binding or even persuasive authority supporting their respective position.  Thus, the Court recommends that summary judgment on this claim be denied.

### C.   *Relief Available Under § 1132(c)(1)*

The Smiths claim entitlement to penalties under subsection 1132(c)(1) for Defendants' alleged delay in producing, *inter alia,* medical reviews conducted by Mutual of Omaha, <u>see</u> *Am. Cmplt.* at ¶ 17.[6]  Defendants seek summary judgment on this claim

---

[6]The Smiths also allege that they requested other documents, requests to which "Defendant Earhart gave untimely and incomplete responses."  *See Am. Cmplt.* at ¶¶ 11-13. Defendants' present motion does not appear to challenge these allegations, but rather is limited to the allegedly withheld medical reviews. Accordingly, the Court does not address the other document requests.

arguing that ERISA does not require disclosure of documents concerning specific claim appeals or those that fall under 29 C.F.R. § 2560.503-1, a Department of Labor regulation that requires a plan administrator to provide documents to a beneficiary upon request.  Instead, Defendants argue that they are required to disclose only those documents that the ERISA statute itself requires them to disclose.  *Defts' Br. at 8-9.*

ERISA requires that, upon written request of any plan participant or beneficiary, the plan administrator shall furnish a copy of certain documents including the "latest updated summary plan description," or "other instruments under which the plan is established or operated."  29 U.S.C. § 1024(b)(4); *see also Moran v. Aetna Life Ins. Co.,* 872 F.2d 296, 299-300 (9th Cir. 1989).  The failure to provide the documents may result in fines and recovery of costs and attorneys fees under subsections 1132© and (g).

The issue presented here is whether the medical reviews that the Smiths requested fall within § 1024(b)(4)'s description of those documents that must be furnished.  It appears that the Ninth Circuit has not addressed this precise issue.  In looking to authority from other jurisdictions, the Court finds the most persuasive, best-reasoned authority from *Montgomery v. Metropolitan Life Ins. Co.,* 403 F.Supp.2d 1261 (N.D. Ga. 2005).  There, the court, construing § 1132(c)'s "plain language," noted that

> [t]he section's phrase 'under this subchapter' (i.e. ERISA) clearly
> embraces an administrator's failure or refusal to provide the documents
> identified in Section 1024, namely "the latest updated summary plan
> description, and the latest annual report, any terminal report, the
> bargaining agreement, trust agreement, contract, or other instruments
> under which the plan is established or operated. ... [T]he source of the
> obligation of an administrator to provide a plaintiff with copies 'relevant' or
> 'pertinent' to a claim is outside the statute. ... [Thus,] '[t]o the extent

-26-

claims-related documents are required to be provided, the obligation
arises by federal regulation, [which] does not provide for strict liability for
violations, nor does the regulation impose a per-diem fine for violations.

*Montgomery*, 403 F.Supp.2d at 1265 (citations and quoted authority omitted).

Under this authority, claims-related documents, such as medical reviews, are not

the types of documents that ERISA requires to be disclosed.  Thus, Defendants' motion

for summary judgment, to the extent it relates to penalties for failure to respond to the

Smiths' request for the medical reviews unique to their claims for benefits, should be

granted.

### D.    Women's Health and Cancer Rights Act

Again, Defendants argue that the Women's Health and Cancer Rights Act is

unavailable to the Smiths because it does not allow an implied private right of action for

a violation of it.  *Defts' Br. at 9.*  The Smiths concede this point, *Smiths' Br. at 11,* but

argue that there is a cause of action for a violation of the notice requirements of the

Act.  *Id. at 11-13.*  The Court declines to address the Smiths' argument because they

have not pled a violation of any notice requirements under the Act.

Thus, Defendants' motion for summary judgment on this issue should be

granted.

### VI.    CONCLUSION

Based on the foregoing,

**IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment

(*Court's Doc. No. 23*) be GRANTED, in part, and DENIED, in part, as set forth herein.

-27-

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Order and Findings and Recommendation of the United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendation portion must be filed with the Clerk of Court and copies served on opposing counsel within ten (10) days after receipt hereof, or objection is waived.

DATED this 6th day of October, 2008.

Carolyn S. Ostby
United States Magistrate Judge